## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ELECTROSTIM MEDICAL SERVICES, INC.**                    CIVIL ACTION

**VERSUS**                                                        No. 13-5071

**BLUE CROSS BLUE SHIELD OF LOUISIANA**                    SECTION I

## ORDER AND REASONS

Before the Court is a motion[1] to dismiss for improper venue pursuant to Rule 12(b)(3) or, in the alternative, to transfer venue to the Middle District of Louisiana or, in the further alternative, to dismiss the case and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, and if necessary, for an extension of time to answer, filed by defendant, Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ("BCBS"). Plaintiff, Electrostim Medical Services, Inc. ("EMSI"), opposes[2] the motion, and BCBS filed a reply[3] to plaintiff's opposition. For the following reasons, the motion is **DENIED IN PART** and **GRANTED IN PART**.

## BACKGROUND

"EMSI is a health care company providing electrostimulating products . . . in medical settings to patients to alleviate various medical ailments."[4] EMSI provided its products to BCBS's insureds and submitted claims to BCBS on their behalf.[5] The two companies did

---

[1] R. Doc. No. 12.
[2] R. Doc. No. 14.
[3] R. Doc. No. 22.
[4] R. Doc. No. 1, ¶ 5.
[5] *Id.* ¶¶ 6, 10.

business from May 2010 until the end of 2011, when BCBS terminated the Allied Health Provider Agreement ("Agreement") that governed their relationship.[6]

EMSI alleges that it is owed "in excess of $600,000.00" due to unpaid claims which EMSI properly submitted to BCBS on behalf of its insureds.[7] EMSI's complaint includes a breach of contract claim,[8] claims for violations of the Louisiana insurance code,[9] ERISA claims,[10] unjust enrichment claims,[11] a breach of implied contract claim,[12] a third-party beneficiary claim,[13] a *quantum meruit* claim,[14] and a request for injunctive relief, including a request for a temporary restraining order.[15] The request for a temporary restraining order was denied by U.S. District Judge Susie Morgan on July 15, 2013.[16]

In lieu of an answer, BCBS filed the instant motion on August 8, 2013, which makes a number of requests.[17] First, BCBS states, "Plaintiff's claims should be dismissed for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure."[18] In the alternative, BCBS asks the Court to "exercise its discretion to transfer this case under 28 U.S.C. § 1404(a)."[19] Next, BCBS requests that the Court enforce the Agreement, "compel Plaintiff to submit to arbitration all claims alleged in the Complaint, dismiss the Complaint, and stay all further proceedings."[20]

---

[6] *Id.* ¶¶ 7-8.
[7] *Id.* ¶ 12.
[8] *Id.* ¶¶ 18-23.
[9] *Id.* ¶¶ 24-30.
[10] *Id.* ¶¶ 31-38.
[11] *Id.* ¶¶ 39-41, 57-60.
[12] *Id.* ¶¶ 42-45.
[13] *Id.* ¶¶ 46-52.
[14] *Id.* ¶¶ 53-56.
[15] *Id.* ¶¶ 61-65.
[16] R. Doc. No. 7.
[17] R. Doc. No. 12.
[18] R. Doc. No. 12-1, at 3.
[19] *Id.* at 4.
[20] R. Doc. No 12, at 1.

Finally, BCBS "further requests that the Court extend the time to answer Plaintiff's Complaint (if necessary) until twenty days following the Court's ruling."[21] BCBS attached a number of exhibits to its motion,[22] including a copy of the Agreement.[23]

In its opposition,[24] EMSI argues that it should be entitled to deference as to its choice of forum[25] and that BCBS "failed to show 'good cause' why the case should be transferred."[26] EMSI argues that BCBS has waived its right to arbitration and that, pursuant to § 9.1 of the Agreement, BCBS "has acquiesced to EMSI's demands as a result of its failure to participate in arbitration proceedings"[27] which it initiated on April 23, 2012.[28] EMSI also attached a number of exhibits to its opposition.[29]

BCBS filed a reply memorandum on September 10, 2013.[30] BCBS reiterated that EMSI has not satisfied the prerequisites to arbitration required by the agreement, and it contested EMSI's assertion that it ever agreed to arbitration.[31] BCBS also reiterated its arguments related to the venue issue.[32] BCBS attached two more exhibits to its reply memorandum.[33]

---

[21] *Id.*
[22] R. Doc. Nos. 12-2 to -10.
[23] R. Doc. No. 12-2.
[24] R. Doc. No. 14.
[25] *Id.* at 1-2.
[26] *Id.* at 3.
[27] *Id.* at 5.
[28] *Id.* at 7.
[29] R. Doc. Nos. 14-1 to -7.
[30] R. Doc. No. 22.
[31] *Id.* at 1-2.
[32] *Id.* at 2-3.
[33] R. Doc. Nos. 22-1, 22-2.

## LAW AND ANALYSIS

**I.      Motion to Dismiss for Improper Venue**

> A.      Standard of Law

Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes a defendant to move for dismissal due to improper venue. When resolving a Rule 12(b)(3) motion without an evidentiary hearing, a court accepts a plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. See *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. Sept. 18, 2003); *McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. Mar. 9, 2001). Furthermore, the Court resolves any conflicts in plaintiff's favor. *McCaskey*, 133 F. Supp. 2d at 523. Courts have provided the plaintiff with the benefit of the doubt when determining the governing facts. *Id.* Unlike a Rule 12(b)(6) motion, however, a court may consider extrinsic materials, including affidavits and other materials, in determining whether venue is proper. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004); *Tinsley v. Comm'r*, No. 96-1769, 1998 WL 59481, at *2 (N.D. Tex. Feb. 9, 1998) ("[M]otions to dismiss for improper venue under 12(b)(3) are generally resolved through submission of affidavits and declarations and discovery materials").

28 U.S.C. § 1406 states, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Whether or not this Court is a proper venue is determined pursuant to 28 U.S.C. § 1391.[34] Section 1391(b) provides:

---

[34] The venue statute was amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("FCJVCA"), Pub. L. No. 112-63, on December 7, 2011. The amendments included a reorganization of the general venue statute, 28 U.S.C. § 1391, such that part of subsection (c) "was recodified by the FCJVCA in a slightly amended form at 28 U.S.C. § 1391(d)." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Smith Tank & Steel, Inc.*, No. 11-3054, 2013 WL

> A civil action may be brought in . . . (1) a judicial district in which any defendant resides, . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Generally, the residency of a corporate[35] defendant is deemed to be "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). However, in states with multiple judicial districts, a corporate defendant "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *Id.* § 1391(d).

This Court is a proper venue with respect to BCBS if it "resides" in the Eastern District of Louisiana. *See id.* § 1391(b)(1). BCBS "resides" in this district if it has sufficient minimum contacts with the district pursuant to a personal jurisdiction analysis.[36] *See id.* § 1391(d). Accordingly, the Court must determine whether EMSI has carried its "burden of establishing that a defendant has the requisite minimum contacts with the forum state to justify the court's jurisdiction." *Herman v. Cataphora, Inc.*, No. 12-30966, --- F.3d ---, 2013 WL 5223101, at *3 (5th Cir. Sept. 17, 2013) (citing *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999)).

Where, as here, the Court rules without conducting an evidentiary hearing, the plaintiff bears the burden of establishing a prima facie case that the Court has jurisdiction over a

---

1313063, at *1 n.10 (E.D. La. Mar. 28, 2013) (Morgan, J.). Accordingly, pre-FCJVCA cases cited in this opinion may refer to a different subsection than the current codification.

[35] The defendant need not be a corporation. Rather, it can be any "entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated." 28 U.S.C. § 1391(c)(2).

[36] Although the following standard of law and analysis discusses personal jurisdiction, the question remains whether *venue* is appropriate pursuant to 28 U.S.C. § 1391(d).

defendant. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).[37] The Court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). "However, the *prima-facie*-case requirement does not require a court to credit a plaintiff's conclusory allegations that lack foundational support or require the court to draw tortured inferences." *Hills v. Brinks, Inc.*, No. 07-4207, 2008 WL 243944, at *2 (E.D. La. Jan. 25, 2008) (Vance, J.) (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001)).

If the defendant disputes the factual basis for jurisdiction, "the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue." *Walk Haydel*, 517 F.3d at 241 (citations and quotations omitted). The Court may also "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 858 n.5 (E.D. La. 2012) (Fallon, J.) (citing *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 410-11 (5th Cir. 2010)). The court should not, however, act as a fact finder, and it must construe all disputed facts in the plaintiff's favor. *Walk Haydel*, 517 F.3d at 241.

A federal court may only exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2)

---

[37] While the plaintiff must ultimately demonstrate that jurisdiction is proper by a preponderance of the evidence, courts are permitted to defer the resolution of that question until trial to allow it to be resolved along with the merits. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 & n.1 (5th Cir. 2007). Because the limits of the Louisiana long-arm statute are coextensive with constitutional due process limits, the Court need only consider the second step of the inquiry. *Walk Haydel*, 517 F.3d at 242-43 (citing *A & L Energy, Inc. v. Pegasus Grp.*, 791 So. 2d 1266, 1270 (La. 2001)).

"As interpreted by the Supreme Court, the Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (citing *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted).

"The 'minimum contacts' prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction." *Freudensprung*, 379 F.3d at

343. "Where a defendant has continuous and systematic general business contacts with the forum state, the court may exercise general jurisdiction over any action brought against that defendant." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citation and internal quotation marks omitted). "Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (citation and quotation marks omitted).

> B.   Analysis

In its complaint, EMSI alleges, "Defendant [BCBS] is a Louisiana corporation duly authorized and conducting business in Louisiana."[38] EMSI also alleges, "Venue is proper in Louisiana, because [BCBS's] principal place of business is in Louisiana and because [BCBS] has breached contracts to pay money to EMSI that was due in Louisiana, and thus the causes of action alleged herein accrued in Louisiana."[39] In its request for injunctive relief, EMSI also alleges: "[BCBS] has notified various patients that EMSI is not authorized to do business in Louisiana and not authorized to provide medical products and services to patients in Louisiana. [BCBS] has referred certain patients of EMSI to other providers for the same and similar services."[40]

In its motion, BCBS argues that this Court is not a proper venue because its "principal place of business is in Baton Rouge, not in the Eastern District," and it does not, therefore, "reside" in the Eastern District of Louisiana.[41] BCBS also argues that "not a single 'event or omission' giving rise to this suit occurred in the Eastern District of Louisiana."[42] BCBS notes:

---

[38] R. Doc. No. 1, ¶ 3.
[39] *Id.* ¶ 4.
[40] *Id.* ¶ 63.
[41] R. Doc. No. 12-1, at 3.
[42] *Id.*

"Plaintiff fails to cite any reason why the Eastern District is the appropriate venue for this matter. In fact, Plaintiff cites no reason why any district would be appropriate for this matter."[43] In its opposition, EMSI states, "BCBS does business throughout the state of Louisiana, including in the Eastern District[,] and its insureds are located throughout Louisiana."[44]

The Court finds that venue is proper because EMSI has made a prima facie case that BCBS has "continuous and systematic general business contacts" throughout the State of Louisiana, including the Eastern District. *See Luv N' care, Ltd.*, 438 F.3d at 469. Although BCBS is correct that EMSI's allegations regarding venue are not specific to the Eastern District of Louisiana,[45] BCBS does not offer any rebuttal to EMSI's allegation that it "does business throughout the state of Louisiana, including in the Eastern District."[46] Within Louisiana's estimated population of 4.6 million, over 1.6 million people live in the Eastern District.[47] "Unless defendants are to contend that they do not conduct business in an area that encompasses more than a third of the state's population and involves significant economic activity—which they do not—they would be hard pressed to refute plaintiff's allegations." *Hills*, 2008 WL 243944, at *3.

Furthermore, the Court notes that BCBS has been sued many times in this Court without raising objections as to venue, albeit in unrelated proceedings. *See, e.g.*, *Kingsmill v. La. Health Serv. & Indem. Co.*, No. 09-6787, 2012 WL 1193547 (E.D. La. Apr. 10, 2012); *Crosby v. Blue*

---

[43] *Id.* at 4.

[44] R. Doc. No. 14, at 4.

[45] EMSI apparently alleges that venue would be proper as to BCBS anywhere in the state. R. Doc. No. 1, ¶ 4. As stated above, although EMSI must eventually "show by a preponderance of the evidence that jurisdiction is proper," the Court, as it must, construes all disputed facts in plaintiff's favor. *Walk Haydel*, 517 F.3d at 241; *see also Latshaw*, 167 F.3d at 211.

[46] R. Doc. No. 14, at 4.

[47] *See* State & County QuickFacts: Louisiana, U.S. Census Bureau, http://quickfacts.census. gov/qfd/states/22000.html (last visited October 22, 2013). The Court takes judicial notice of these figures from the U.S. Census Bureau's 2012 population estimates for each of the thirteen parishes within the Eastern District. *See* Fed. R. Evid. 201(b); *Hills*, 2008 WL 243944, at *3 & nn.5-6 (citing *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989)).

*Cross/Blue Shield of La.*, No. 08-693, 2009 WL 1940864 (E.D. La. July 2, 2009); *Lakeland Anesthesia, Inc. v. La. Health Serv. & Indem. Co.*, No. 00-1151, 2000 WL 1134365 (E.D. La. Aug 9, 2000); *see also* Answer, R. Doc. No. 6, at 2, Civil Action No. 09-6787, *Kingsmill v. La. Health Serv. & Indem. Co.* (E.D. La. Nov. 4, 2009) ("Blue Cross submits to the jurisdiction of this court. . . . Blue Cross admits that venue is proper in this district.").[48] It would, therefore, be difficult for BCBS to convince this Court that it "should [not] reasonably anticipate being haled into court" in the Eastern District of Louisiana. *See World-Wide Volkswagen*, 444 U.S. at 297.

The Court concludes that BCBS has minimum contacts with the Eastern District because it "purposefully avail[ed] itself of the privilege of conducting activities within" this district, see *Burger King*, 471 U.S. at 475, and that "traditional notions of fair play and substantial justice" are not offended by holding that venue is proper here. *See Freudensprung*, 379 F.3d at 343. Accordingly, because EMSI "has made an unrebutted *prima facie* showing that [BCBS is] subject to personal jurisdiction in the Eastern District of Louisiana," the Court finds "that venue in this forum is proper" pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(c)(2), and 1391(d). *See Hills*, 2008 WL 243944, at *3.[49]

---

[48] The Court takes judicial notice of these cited opinions and the contents of the dockets in these other cases, which are public record and are properly considered by the Court under Fed. R. Evid. 201(b). *See In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d at 858 n.5 (citing *Enriquez-Gutierrez*, 612 F.3d at 410-11) (taking judicial notice, in the course of an analysis of a party's minimum contacts with the forum, "of the record in prior, related proceedings").

[49] The Court also notes that, contrary to BCBS's allegations that "not a single 'event or omission' giving rise to this suit occurred in the Eastern District of Louisiana," R. Doc. No. 12-1, at 3, EMSI has alleged that BCBS has and continues to "interfere[] with its business and its patients" in the state. R. Doc. No. 1, ¶ 63. Construing this disputed fact in plaintiff's favor, as the Court must, see *Walk Haydel*, 517 F.3d at 241, EMSI apparently alleges that BCBS is engaging in this behavior throughout the entire state, including in the Eastern District. R. Doc. No. 1, ¶ 63. Accordingly, venue is also proper because this is "a suit arising out of or related to the defendant's contacts with the forum." *See Luv N' care, Ltd.*, 438 F.3d at 469 (internal quotation marks omitted).

## II.   Motion to Transfer Venue

### A.   Standard of Law

28 U.S.C. § 1404(a) permits a district court to transfer any civil action "[f]or the convenience of parties and witnesses, in the interest of justice" to any other district "where it might have been brought." The moving party has the burden of showing "good cause" for a transfer by "clearly demonstrat[ing] that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quoting 28 U.S.C. § 1404(a)). If the transferee court is not clearly more convenient, then the court deciding whether to transfer should respect the plaintiff's choice of venue. *Id.* "[T]ransfer under § 1404(a) is 'committed to the sound discretion' of the transferring court . . . ." *Hills*, 2008 WL 243944, at *4 (quoting *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988)).

When determining whether a transfer is warranted for the convenience of the parties and witnesses and the interest of justice, the Court must consider private and public interest factors. "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *In re Volkswagen of Am.*, 545 F.3d at 315 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the

application of foreign law.'" *Id.* None of these factors are "of dispositive weight." *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).

> B.      Analysis

As a preliminary matter, it is clear that this action could have been brought in the requested transferee district, the Middle District of Louisiana. BCBS maintains its headquarters and principal place of business in Baton Rouge[50] and, as discussed above, EMSI has alleged, and BCBS has failed to rebut, that venue would be proper anywhere in Louisiana.

Nevertheless, the Court is not convinced that BCBS has "clearly demonstrated" that a transfer is warranted for the convenience of the parties and witnesses. BCBS has alleged that "[a]ll of the witnesses concerning the investigation, processing, and payment/non-payment of EMSI's claims are located in Baton Rouge."[51] EMSI has responded with its own general statements that "[m]any of those patients and health care professionals [whom EMSI would call as witnesses] are located in the Eastern District" and that "it will be easier and less expensive for EMSI's corporate employees and witnesses to travel to New Orleans from Tampa as opposed to traveling to Baton Rouge."[52]

"[T]he party moving for transfer must do more than make a general allegation that certain key witnesses are needed." *Hills*, 2008 WL 243944, at *5 (internal quotation marks omitted). The moving party "must specifically identify the key witnesses and outline the substance of their testimony." *Id.* (internal quotation marks omitted) (citing cases). Accordingly, the general allegations by BCBS are entitled to relatively little weight. The slight inconvenience to BCBS's witnesses and representatives which may be caused by traveling to New Orleans is likely offset

---

[50] R. Doc. No. 12-1, at 3.
[51] R. Doc. No. 22, at 3.
[52] R. Doc. No. 14, at 4.

by the countervailing slight inconvenience to EMSI's witnesses and representatives which may be caused by traveling to Baton Rouge.

Furthermore, the availability of compulsory process under Rule 45(b) of the Federal Rules of Civil Procedure would be little different between the two venues. Baton Rouge and New Orleans are less than 100 miles apart.[53] A witness in either city could be subpoenaed to appear at a court in the other city. *See* Fed R. Civ. P. 45(b)(2)(B).[54] Similarly, Tampa is much further than 100 miles away from both the Middle and Eastern Districts of Louisiana. Accordingly, the choice between Baton Rouge and New Orleans has no significant impact on Rule 45(b)'s application to witnesses residing in either district.

As a result, the ease of access to sources of proof, the availability of compulsory process to secure the attendance of witnesses, the cost of attendance for willing witnesses, and other practical problems that make trial of a case easy, expeditious, and inexpensive do not weigh strongly in favor of either district. *See, e.g.*, *Asevedo v. NBCUniversal Media, LLC*, No. 12-2005, 921 F. Supp. 2d 573, 591-93 (E.D. La. Feb. 4, 2013) (Africk, J.) (declining to grant a transfer when the factors did not weigh in favor of either district); *Lindsey v. WMS Marine, Inc.*, No. 11-1949, 2012 WL 2339689, at *2 (E.D. La. June 19, 2012) (Duval, J.) (same); *Hills*, 2008 WL 243944, at *3-6 (same).

The public interest factors add little to the analysis and are mostly neutral in this case. Neither district presents administrative difficulties flowing from court congestion, and there is no

---

[53] The Court takes judicial notice of this fact as both "generally known within the trial court's territorial jurisdiction," see Fed. R. Evid. 201(b)(1), and "accurately and readily determin[able] from sources whose accuracy cannot reasonably be questioned," see Fed. R. Evid. 201(b)(2). *E.g.*, State-Based County Outline Maps, U.S. Census Bureau, http://www.census.gov/geo/maps-data/maps/stcou_outline.html (last visited October 22, 2013).

[54] The Court notes that Rule 45 will be reorganized and amended effective December 1, 2013, absent contrary Congressional action. The relevant provisions will then be found at Rule 45(c)(1)(A) and 45(c)(2)(A).

need to avoid unnecessary problems of conflict of law. The local interests of both districts support maintaining this trial in their respective forums. Both forums are equally familiar with the law that will govern the case. Because BCBS has not carried its burden and has not demonstrated that the Middle District of Louisiana is clearly more convenient than the Eastern District of Louisiana, this Court will respect plaintiff's choice of venue.

### III.    Motion to Compel Arbitration

#### A.    Standard of Law

The FAA requires the Court to enforce arbitration agreements by issuing an order directing the parties to engage in arbitration and staying litigation in any case raising a dispute referable to arbitration. 9 U.S.C. §§ 3-4; *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 389 n.1 (5th Cir. 2006) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on the application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "Courts conduct a bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute." *Wash. Mut. Fin. Grp. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). "In ruling upon a motion to compel arbitration, the court first determines whether the parties agreed to arbitrate the particular type of dispute at issue." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (citing *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007)). To determine whether the parties have agreed to arbitrate a particular claim,

this Court must consider: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *JP Morgan*, 492 F.3d at 598 (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). "Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims nonarbitrable." *Wash. Mut. Fin. Grp.*, 364 F.3d at 263 (citing *Primerica*, 304 F.3d at 471). "'The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration.'" *Id.* (quoting *Primerica*, 304 F.3d at 471).

### B.     Allied Health Provider Agreement

The Allied Health Provider Agreement ("Agreement") includes a broad dispute resolution provision that requires BCBS to "make available to [EMSI] a mechanism for resolution of disputes between the parties to this Agreement."[55] This mechanism requires that EMSI "invoke the dispute resolution process by writing to" the "Appeals and Grievance Department" at a specified physical address in Baton Rouge.[56] The parties are directed to assign staff members "to discuss and seek resolution of the dispute" within 60 days of receipt of such notice.[57] If the dispute is not resolved within this time period, "management from each party not involved in the initial discussion will have an additional thirty (30) days to resolve the dispute. This time period may be extended by mutual agreement of the parties."[58]

"[I]f additional meetings are held and no resolution of the dispute is reached within sixty (60) calendar days from the initial meeting, the parties shall elect binding arbitration as set forth

---

[55] R. Doc. No. 12-2, § 9.1.

[56] *Id.*

[57] *Id.*

[58] *Id.*

herein . . . ."[59] After this informal dispute resolution process is exhausted, the Agreement provides several additional procedures that govern the arbitration process.[60] The Agreement also states, "A party's failure to participate in the arbitration proceedings means that that party has acquiesced in the other party's demands."[61]

   C. Arbitrability

  BCBS argues, "Not only has [EMSI] filed suit instead of engaging in arbitration, it has refused to follow any of the contractual dispute resolution processes that lead . . . to arbitration."[62] BCBS asks the Court to "order the parties to engage in the Dispute Resolution process mandated by the contract between them," which BCBS contends EMSI never actually invoked.[63] BCBS also alleges that the arbitration clause is binding and enforceable pursuant to U.S. Court of Appeals for the Fifth Circuit precedent.[64]

  EMSI does not contend that the arbitration clause is not enforceable or that it does not apply to this dispute. Instead, EMSI contends that it "began the dispute resolution process in early 2011,"[65] or at the latest "in March 2012."[66] In support of this contention, EMSI attaches to its opposition a series of exhibits containing emails and letters exchanged by counsel for EMSI, counsel for BCBS, and an arbitrator.[67] EMSI contends that BCBS has "improperly applied an 'off again, on again, off again' approach by initially refusing to arbitrate, then agreeing to

---

[59] *Id.*
[60] *Id.* § 9.2.
[61] *Id.* § 9.1.
[62] R. Doc. No. 12-1, at 8.
[63] *Id.* at 15.
[64] *See id.* at 6-15.
[65] R. Doc. No. 14, at 8.
[66] *Id.* at 9.
[67] *See* R. Doc. Nos. 14-1, 14-3 to -7.

arbitrate at a status conference, then subsequently refusing to arbitrate."[68] EMSI alleges that, after agreeing to arbitrate and agreeing to pay a retainer to the arbitrator, BCBS "submitted its brief opposing arbitration but then refused to pay the retainer and ultimately refused to participate in the arbitration."[69] Accordingly, EMSI argues that BCBS has waived its right to arbitration and that, under § 9.1 of the Agreement, BCBS "has acquiesced to EMSI's demands as a result of its failure to participate in [the] arbitration proceedings"[70] that it initiated on April 23, 2012.[71]

> In its reply memorandum, BCBS responds:

> As shown in EMSI's memorandum, the undersigned consistently repeated his warning that the matter was not ready for arbitration. Yet, EMSI refused to comply with the steps set forth in the contract under which it is seeking relief. Ultimately Blue Cross filed a formal objection to the arbitration proceeding based on EMSI's refusal to abide by the terms of the contract which are meant to promote less formal resolution procedures. ([BCBS] Exhibit B). EMSI's Exhibit E [an email from BCBS's counsel] shows that [BCBS] stood by its position.[72]

> Regarding the agreement to provide the retainer to the arbitrator at the status conference, counsel for BCBS writes that he, "on behalf of [BCBS], most certainly <u>did not</u> agree to put up $5,000, and so it did not."[73] BCBS concludes, with some exasperation, that "EMSI has offered no excuse for refusing to do what it agreed to do" and submit to the dispute resolution process, "even after being reminded/told/informed over and over and over."[74]

---

[68] R. Doc. No. 14, at 10.
[69] *Id.* at 9. BCBS includes the brief which it submitted to the arbitrator as an exhibit to its reply memorandum. R. Doc. No. 22-2.
[70] R. Doc. No. 14, at 5.
[71] *Id.* at 7.
[72] R. Doc. No. 22, at 2.
[73] *Id.*
[74] *Id.* at 3.

EMSI does not argue that the arbitration clause is invalid or that the dispute does not fall within the scope of that agreement.[75] Indeed, EMSI has tried to avail itself of the arbitration clause to resolve its dispute, albeit in a manner that BCBS contends does not comport with the Agreement. Accordingly, there is no question that "the parties agreed to arbitrate the particular type of dispute at issue." *See Carey*, 669 F.3d at 205. The Court also finds that the parties have not cited any "federal statute or policy [which] renders the claims nonarbitrable." *See Wash. Mut. Fin. Grp.*, 364 F.3d at 263. Because the "bifurcated inquiry to determine whether parties should be compelled to arbitrate a dispute" has been satisfied, see *id.*, and in light of the "strong national policy favoring arbitration of disputes," *id.*, the Court finds that EMSI's claims are arbitrable.

> D.     Prerequisites to Arbitration

BCBS argues that arbitration is not yet ripe because EMSI did not satisfy the prerequisites to arbitration under the Agreement.[76] The Fifth Circuit has stated that the Supreme Court's cases dictate "that the question of compliance with procedural prerequisites to arbitration . . . is for the arbitrator." *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 149 (5th Cir. 1987) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)). In *John Wiley*, the Supreme Court stated, "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration,[77] 'procedural' questions which grow out of

---

[75] The Court notes that BCBS argues, "[E]ven were this Court to determine that any portion of Plaintiffs' claims were not subject to arbitration, the Court should stay any further proceedings before it pending completion of arbitration." R. Doc. No. 12-1, at 14. Because EMSI does not contend that any of its claims are not subject to the arbitration clause of the Agreement, the Court need not address this alternative argument.

[76] *See id.* at 9-15.

[77] "Whether contracting parties have submitted a particular dispute to arbitration is a question of 'substantive arbitrability' and presumptively for the court to decide." *Allen v. Apollo Grp., Inc.*, No. 04-3041, 2004 WL 3119918, at *5 (S.D. Tex. Nov. 9, 2004) (Rosenthal, J.) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Substantive arbitrability is not at issue in

the dispute and bear on its final disposition should be left to the arbitrator." 376 U.S. at 557. "For 'question[s] of so-called 'procedural arbitrability,'' the arbitrator, not the court, generally decides whether the parties complied with the agreement's procedural rules." *General Warehousemen & Helpers Union Local 767 v. Albertson's Distrib., Inc.*, 331 F.3d 485, 488 (5th Cir. 2003) (quoting *John Wiley*, 376 U.S. at 555).

This general rule is subject to a "rare exception" which applies only "if it could confidently be said not only that a claim was strictly 'procedural,' and therefore within the purview of the court, but also that it should operate to bar arbitration altogether." *John Wiley*, 376 U.S. at 558. The Fifth Circuit has "interpreted this rare exception to mean that 'a court will not order arbitration if 'no rational mind' could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear.'" *General Warehousemen*, 331 F.3d at 488 (quoting *Oil, Chem. & Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chem. Co.*, 815 F.2d 338, 342 (5th Cir. 1987)). The Court should not decide for itself the procedural question, but it must instead "concentrate on what a rational mind *could* decide." *Id.* "If a rational mind could differ as to the resolution of the procedural question, the court leaves the issue of procedural compliance to the arbitrator." *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 937 (S.D. Tex. Sept. 12, 2008) (citing *General Warehousemen*, 331 F.3d at 488).

Neither BCBS nor EMSI provided any briefing or argument relative to the issue of procedural arbitrability or the *John Wiley* exception. The parties clearly dispute whether the Agreement's prerequisites have been satisfied, but in the absence of any briefing or argument on

---

this case because neither party contends that the underlying dispute is not subject to the arbitration clause in the Agreement.

the applicability of the *John Wiley* exception, the Court cannot say that a "rational mind" could make *any* conclusion regarding whether the procedural prerequisites have been met.

The Court, therefore, finds that "rational mind[s] could differ as to the resolution of the procedural question" relative to the prerequisites to arbitration. *See Perez*, 592 F. Supp. 2d at 937; *see also General Warehousemen*, 331 F.3d at 488. Especially in light of the "strong national policy favoring arbitration of disputes," the Court's "doubt[] concerning the arbitrability of claims should be resolved in favor of arbitration.'" *Wash. Mut. Fin. Grp.*, 364 F.3d at 263 (citing *Primerica*, 304 F.3d at 471). Accordingly, this issue is properly decided by an arbitrator.

E.     Waiver

EMSI contends that BCBS has waived arbitration pursuant to the terms of the Agreement by failing to participate in the arbitration that EMSI properly initiated on April 23, 2012. However, as discussed above, no rational mind could make a conclusion on the basis of what has been submitted to the Court regarding whether conditions precedent to arbitration have been satisfied. Furthermore, the question of waiver is another procedural question that should be arbitrated. *Howsam*, 537 U.S. at 84 (quoting *Moses H. Cone*, 460 U.S. at 25) ("[T]he presumption is that the arbitrator should decide 'allegation[s] of *waiver*, delay, or a like defense to arbitrability.'") (emphasis added); *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750, 753 (5th Cir. 1995) ("Supreme Court precedent requires that [procedural issues] be decided by the arbitrator. The district court's only role should have been to determine whether the subject matter of the dispute was subject to arbitration under the parties' agreement."). Accordingly, this issue is also properly decided by an arbitrator.

**CONCLUSION**

BCBS asks the Court to both "dismiss the Complaint" and "stay all further proceedings."[78] Pursuant to the FAA, the Court is directed to "stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. However, "[w]hen all of the issues raised in the district court are referable to arbitration, district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3." *Anderson v. Waffle House, Inc.*, 920 F. Supp. 2d 685, 695 (E.D. La. Jan. 29, 2013) (Barbier, J.); *see also Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)) ("We have previously held that district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3."). "Because all of Plaintiff's claims are referable to arbitration, the Court finds that dismissal of the instant suit is appropriate." *Anderson*, 920 F. Supp. 2d at 695.

Accordingly,

**IT IS ORDERED** that the motion, to the extent it requests the Court to dismiss for improper venue, is **DENIED**.

**IT IS FURTHER ORDERED** that the motion, to the extent that it requests the Court to transfer venue to the Middle District of Louisiana, is **DENIED**.

**IT IS FURTHER ORDERED** that the motion, to the extent that it requests the Court to compel arbitration, is **GRANTED**. The parties shall submit this dispute, including issues of procedural arbitrability arising out of the dispute, to arbitration in accordance with the Agreement.

---

[78] R. Doc. No. 12, at 1.

**IT IS FURTHER ORDERED** that the motion, to the extent that it requests the Court to dismiss EMSI's complaint, is **GRANTED**. The complaint is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion, to the extent that it requests the Court to stay the above-captioned case, is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the motion, to the extent that it requests the Court to grant an extension of time to answer, is **DISMISSED AS MOOT**.

New Orleans, Louisiana, October 28, 2013.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**